IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVEN ROSS, | CASE NO. 1:21-cv-1565 |
| Petitioner, | DISTRICT JUDGE JOHN R. ADAMS |
| vs. | |
| OHIO DEPARTMENT OF CORRECTIONS REHABILITATIONS, WARDEN TOM SCHWEITZER, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Pro se Petitioner Steven Ross filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Docs. 6, 8. When he filed his petition, Ross was in custody at the Madison Correctional Institution due to a journal entry of sentence in *State v. Ross*, Lake County Court of Common Pleas, Case No. 19-CR-454. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be dismissed.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eleventh Appellate District summarized the facts underlying Ross's conviction as follows:

> {¶2} On October 15, 2018, the Chief Investigator for the Lake County Prosecutor's Office, Joseph Matteo, was contacted by Ja.S., who reported discovering evidence that appellant, her ex-boyfriend of some ten years, had secretly videotaped her minor daughter, Jo.S., in a state of nudity. Ja.S. stated she found a thumb drive in her home, which, among various files belonging to appellant, included a photograph of Jo.S. sunbathing. She became suspicious; meanwhile, Ja.S. was having difficulty with a laptop she owned and had a friend, Mr. Lewis Sharaba, address the problems. Ja.S. also asked Mr. Sharaba to examine the thumb drive; he did and found various deleted files, which he was able to retrieve and transfer to a second thumb drive, which was his property.

> {¶3} Ja.S. advised Investigator Matteo that she viewed the videos transferred by Mr. Sharaba and observed appellant setting up and hiding a recording device in their bathroom; Jo.S. entering the bathroom and undressing for a shower. On October 24, 2018, Ja.S. met with the investigator and provided him with a hard-drive, which belonged to appellant, as well as the original thumb drive and the second thumb drive which contained the retrieved videos. After viewing the videos, Investigator Matteo confirmed Ja.S.' claims.

> {¶4} Several days later, the investigator turned the items over to Kirkland Police Department; after obtaining statements from Ja.S. and Mr. Sharaba, Kirtland officers acquired a search warrant authorizing the search of the original thumb drive and the hard drive. After securing the warrant, the evidence was submitted to forensic examiner Rick Warner; Mr. Warner was able to recover four video files from appellant's thumb drive which depicted appellant recording Jo.S. in a state of nudity when she was between the ages of 13 and 16 years old.

*State v. Ross*, No. 2020-L-013, 2020 WL 4747492, at *1 (Ohio Ct. App. Aug. 17, 2020).

### Procedural background

*Trial court proceedings*

In May 2019, the Lake County Grand Jury indicted Ross on four counts of voyeurism. Doc. 17-1, at 65 (Exhibit 4), at 139 (Exhibit 9). Ross waived his right to be present at arraignment and the trial court entered a plea of not guilty on his behalf. *Id*. at 139. Ross posted bond and was released. *Id*.

Ross, through counsel, moved to suppress evidence. Doc. 17-1, at 140. The court held a hearing and then overruled Ross's motion. *Id*. at 141; Doc. 17-3 (suppression hearing).

Ross withdrew his not guilty plea and pleaded no-contest. Doc. 17-1, at 141. The trial court found Ross guilty as charged and continued his bond. *Id*. Ross violated the conditions of his bond by testing positive for cocaine. *Id*. at 65, 141. The court revoked Ross's bond and issued a warrant for his arrest. *Id*. Ross was later arrested in the state of Georgia. *Id*.

On January 8, 2020, the trial court sentenced Ross to nine months in prison on each count, to run consecutively, for a total of 36 months in prison. Doc. 17-1, at 141; Doc. 17-5, at 42. The court also notified Ross that he must register as a sex offender. Doc. 17-1, at 141; Doc. 17-5, at 29–30.

*Direct appeal*

Ross, through new counsel, appealed to the Ohio court of appeals. Doc.

17-1, at 9 (Exhibit 2). In his brief, he raised the following assignments of error:

> 1. The trial court erred in denying the Motion to Suppress in violation of his due process rights and rights against unreasonable search and seizure as guaranteed by the Fourth and Fourteenth amendments to the United States Constitution and Article I, sections 10 and 14 of the Ohio constitution.
>
> 2. The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio constitution were prejudiced by the ineffective assistance of trial counsel.
>
> 3. The trial court erred by sentencing the defendant-appellant to individual prison terms, of nine months on each count to be served consecutively, as the trial court's findings with respect to R.C. 2929.14 were unsupported by the record and thus, contrary to law.

*Id*. at 10–11. On August 17, 2020, the Ohio court of appeals affirmed the trial

court's judgment. *Id*. at 63–75 (Exhibit 4).

*First federal habeas petition*

On December 17, 2020, Ross filed a federal habeas corpus petition under

28 U.S.C. § 2254. *See Ross v. Clipper*, No. 1:20-cv-2795, 2021 WL 1534826 (N.D.

Ohio Apr. 18, 2021). On April 18, 2021, the Court dismissed Ross's petition

under Rule 4 of the Habeas Rules because Ross hadn't exhausted his grounds

before bringing them in a federal habeas corpus petition. *Id*. at *2.

*Motion for delayed appeal in the Ohio Supreme Court*

Meanwhile, on March 10, 2021, Ross filed a motion for a delayed appeal in the Ohio Supreme Court. Doc. 17-1, at 77 (Exhibit 5). The Ohio Supreme Court granted Ross's motion for a delayed appeal and ordered him to file a jurisdictional memorandum within thirty days. *Id*. at 98 (Exhibit 6). Ross timely filed his jurisdictional memorandum and raised the following propositions of law:

> 1. Fraudulent Indictment
>
> 2932.03, 2941.29, appR9, evidR1005, evidR901 & 902(4)
>
> Both state and judge knew no one went to the grand jury to indict defendant as the record is silent. It is abuse of discretion, prosecutorial misconduct, miscarriage of justice in case ....[1]
>
> 2. Ineffective Assistance of Counsel
>
> In this case, search warrant was not premised upon probable cause. State v. George 45 Ohio St 3d 325 (1989) Counsel failed to save for the light of the court challenging the warrant prejudice for counsel's failure to challenge the sufficiency of probable cause supporting the trial court's issuance of the warrant. There was no valid warrant .... it was ineffective assistance of counsel not to object to the admission into evidence of the police report compiled by the Kirtland Police…
>
> The State failed to provide Ross with pretrial disclosure of evidence that supported information obtained from a state psychologist from the accused. Yet these allegations were recorded on record

---

[1] Ross's grounds for relief are reproduced as written and have not been edited.

without appellant attorney objecting. The court has held it is inherent in the test of competency that a witness understand the nature of an oath and penalties for its violation. State v. Wilson, 156 Ohio St. 525, 529…

Appellant also contends that putting his criminal records into record which even contained offenses that the prosecutor could not have inquired about demonstrated ineffective assistance of counsel.

Appellant's counsel refused to suppress evidence and object to obtaining of thumb drive from Plaintiff showing that defense was prejudice by counsel's ineffectiveness. State v. Lytte, 48 Ohio St.2d 391.

3. Malicious Prosecution

As in this case, police did not possess probable cause to support the warrant authorizing the search of Appellant's electronic storage devices. This clearly violates the fourth amendment. Malicious prosecution can be claimed against one who furnished false information to, or concealed material information from.

It was falsified that the alleged victim suffered serious "psychological" harm. Never did any medical record prove this for the light of the court nor was the second drug test, testing "negative" submitted in court for sentencing. Again here, Appellant's counsel failed to address this and allowed the court's to justify their consecutive convictions.

Doc. 17-1, at 104–07 (Exhibit 7). On June 22, 2021, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Ross's appeal and also denied a motion to vacate fines that Ross had filed. *Id*. at 137 (Exhibit 8).

6

*Second federal habeas corpus petition*

On August 5, 2021, Ross filed a federal habeas corpus petition under 28 U.S.C. § 2254.[2] Doc. 1, 6, 8. He raised the following grounds for relief:

**Ground one**: Allied offence

*Supporting facts*: Judge sentenced petitioner to 36 months on (4) counts of voyeurism, 9 months consecutively. Originally based on fact that I was a danger when in fact it was based on incomplete and erroneous presentencing evaluation. Plus offense was same ___ and timeline! Some video I was told not clear and guess at when video was taken. It was taken to highest court. Also, unconstitutional I cannot have the opportunity to right myself by being excluded by certain house & senate bills?

**Ground two**: Fraud indictment

*Supporting facts*: See attached also grand jury minutes.[3]

**Ground three**: Malicious prosecution.

*Supporting facts*: Trial court sentenced defendant to 36 months (9 months) for each count— ineffective assistance of counsel led me to believe probation was to be. Sentencing never realized to after sent to prison. PRC/unability to participate in programs for good days/registration never fully explained.

**Ground four**: Motion to vacate fines

*Supporting facts*: See attached facts previously submitted in appeal.

---

[2]    Ross filed his petition in the Southern District of Ohio, and it was transferred to the Northern District of Ohio on August 11, 2021. Doc. 5.

[3]    Ross attached documents to his petition, but none of them relate to an indictment or grand jury minutes. *See* Docs. 8-1, 8-2, 8-3, 8-4.

Doc. 8, at 5–10. The Warden filed a Return of Writ, Doc. 12, and Ross filed a Traverse, Doc. 20, and a memorandum in support, Doc. 20-1.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)

8

(per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

   *Procedural default*

   Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule;

9

(3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental

miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

> *Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent

11

or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

  *1.    Ground one is procedurally defaulted and not cognizable*

In Ground one, Ross challenges the trial court's imposition of consecutive sentences. Doc. 8, at 5. He alleges that the trial court's finding that Ross was a danger to society was based on an "incomplete and erroneous pre[-]sentencing evaluation." *Id.*

  The Ohio court of appeals considered Ross's claim as follows:

> {¶26} For his third assigned error, appellant argues:
>
> {¶27} "The trial court erred by sentencing the defendant-appellant to individual, prison terms of nine months on each count to be served consecutively, as the trial court's findings with respect to R.C. 2929.14 were unsupported by the record and thus contrary to law."
>
> {¶28} Appellant does not argue the trial court failed to make the necessary statutory findings; rather, he challenges the basis of the trial court's findings supporting its imposition of consecutive sentences. We review consecutive sentences imposed pursuant to R.C. 2929.14(C)(4) under R.C. 2953.08(G)(2), which states:
>
>> {¶29} The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>>
>> {¶30} The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's

standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

{¶31} (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

{¶32} (b) That the sentence is otherwise contrary to law.

{¶33} Appellate courts "'may vacate or modify any sentence that is not clearly and convincingly contrary to law'" only when the appellate court clearly and convincingly finds that the record does not support the sentence. *State v. Wilson*, 11th Dist. Lake No. 2017-L-028, 2017-Ohio-7127, ¶8, quoting *Marcum, supra.*

{¶34} Further, R.C. 2929.14(C)(4) provides, in relevant part, as follows regarding consecutive felony sentences:

{¶35} If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

14

{¶36} (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶37} (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

{¶38} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4).

{¶39} At the sentencing hearing, the trial court made the following findings:

{¶40} The court * * * finds that consecutive service is necessary in this case to protect the public from future crime, and to punish the offender. It's not disproportionate to the seriousness of his conduct and to the danger he poses to the public and the court finds first that at least two of the multiple offenses were committed as a part of one or more courses of conduct and the harm that was caused by two or more of these multiple offenses so committed was so great or unusual that no single prison term for any of the offenses

15

committed as a part of any other courses of conduct adequately reflects the seriousness of his conduct and also his history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime.

{¶41} Again, when I talk about his history of criminal conduct, I recognize that there's no—not a lengthy history. The defendant has two prior convictions and one of them is a disorderly conduct. But that other conviction is for the same conduct and I find that that history warrants consecutive sentence and quite frankly, there were four separate acts here. And that's something the court takes into consideration as well. Each of these are separate acts and they should be punished separately.

{¶42} Clearly, the trial court met its statutory burden of listing the findings justifying consecutive sentences. Furthermore, its explication regarding appellant's criminal history is sufficient to support its findings under R.C. 2929.14(C)(4)(c). Further, the trial court emphasized that it considered the statement of Jo.S., which provided an articulate and detailed account of the harm appellant's conduct caused her; the statement, accordingly, provided more than an adequate foundation to support the court's R.C. 2929.14(C)(4)(a) finding. Appellant, however, takes issue with the court's finding that the sentences were not disproportionate to the danger he poses to the public; he further asserts consecutive sentences in his case demean the seriousness of other more violent crimes.

{¶43} With respect to the first point, as the court noted, he was convicted of four separate crimes. Moreover, prior to these offenses, appellant was convicted previously of voyeurism and committed

16

the offenses while under sexual-offender-registration requirements. This demonstrates a definite pattern of perverse conduct of a sexual nature involving non-consensual victims (in this case, a minor). The trial court reasonably concluded that the imposition of consecutive sentences is not disproportionate to the danger he poses to the public.

{¶44} Regarding his second argument, appellant points out that the Second District's holding in *State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980. In *Overholser*, the Second District reversed a trial court's imposition of consecutive sentences, concluding that the sentence was inappropriate because it would "demean the seriousness of other more violent crimes and the harm to other victims." *Id*. at ¶32. The court noted that the appellant in that matter was convicted of five counts of gross-sexual imposition and received four years of imprisonment for each count, to be served consecutively. The court went on to note such a sentence would demean the seriousness of other more violent crimes, such as rape and murder. While we do not see the consideration highlighted in *Overholser* as necessarily improper, it does not accurately trace the statutory language of R.C. 2929.14(C). The statute does not require a court to find that consecutive sentences would demean the severity of other, arguably worse or more violent crimes. Rather, it requires the trial court to find, in light of the surrounding facts, whether consecutive sentences are proportionate (or, alternatively, "not disproportionate") to the seriousness of the criminal conduct *in this* case.

{¶45} Under the circumstances, the court underscored that Jo.S. suffered serious psychological harm, that was catalogued in a statement authored by the victim herself. The court further highlighted the harm and seriousness of the criminal conduct was exacerbated by the victim's age and her relationship with appellant. Appellant stood in loco parentis and held a relationship of trust

17

> with Jo.S. which, the court emphasized, was used to commit the offenses. Given these factors, which are supported by the record, we conclude the trial court did not err when if found consecutive sentences were not disproportionate to the seriousness of appellant's conduct, i.e., the four clandestine recordings of a minor in a state of nudity. We therefore hold the trial court's imposition of four nine-month terms, to be served consecutively, was consistent with the record and not contrary to law.
>
> {¶46} Appellant's final assignment of error is without merit.

*Ross*, 2020 WL 4747492, at *4–6.

### 1.1    Ground one is procedurally defaulted

Ground one is procedurally defaulted because Ross only presented the allied offences issue to the Ohio court of appeals as a state-law violation, rather than a federal-law violation. *See* Doc. 17-1, at 11–12, 26–33 (appellate brief); *see Koontz*, 731 F.2d at 368 (the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law").

Moreover, ground one is procedurally defaulted for another reason— Ross didn't raise an allied offences claim in his pro se appeal to the Ohio Supreme Court. While Ross discussed an allied offences argument under the heading "Ineffective assistance of counsel," *see* Doc. 17-1, at 104–07, that did not preserve the allied offences claim because "the two claims are analytically distinct." *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("bringing an ineffective assistance claim in state court based on counsel's failure to raise an

underlying claim does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct'") (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)); *see also Boddie v. Warden, Chillicothe Corr. Inst.*, No. 2:13-cv-1243, 2015 WL 1757305, at *2 (S.D. Ohio Apr. 17, 2015) (claims that the petitioner failed to raise under "numbered propositions of law" in his memorandum in support of jurisdiction to the Ohio Supreme Court were procedurally defaulted) (citing Ohio Supreme Court Practice Rule 7.02(C)(1) and *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Developmental Disabilities*, 809 N.E.2d 2 (Ohio 2004)).

Finally, Ross didn't present to any of the Ohio courts an allied offences claim based on an argument that the trial court relied on an erroneous pre-sentence investigation report. *See* Doc. 17-1, at 11–12, 26–33, 106–07. So Ross procedurally defaulted ground one in this manner, too. *See McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts).

For cause to excuse any procedural default, Ross argues that the Covid-19 pandemic created a barrier to him communicating with his appellate counsel. Doc. 20, at 2, 7. He alleges that he only spoke to counsel "twice in several months" and sent several letters that counsel didn't respond to. *Id*. But Ross doesn't explain how this alleged limited communication affected his appeal. He hasn't shown that any of the information in the pre-sentence report

was wrong.[4] And Ross never filed an Ohio Rule 26(B) Application to Reopen alleging that appellate counsel was ineffective.[5] So appellate counsel's alleged ineffectiveness can't serve as cause to excuse the procedural default because that argument is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) (ineffective assistance of appellate counsel can only serve as cause to excuse a procedural default if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted).

Ross argues that he had limited access to the prison library and no "access to adequate assistance." Doc. 20, at 2. But Ross "does not indicate why he required additional time to conduct legal research and how his limited law library time prevented him from" appealing certain issues. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). Ross states that the court fines he had to pay "further restrict[ed] [his] ability to litigate [his] claim[,] making it

---

[4]    In his Traverse, Ross alleges that "it is of error th[at] Ross tested positive for cocaine." Doc. 20, at 1. *See also* Doc. 17-3, at 27 (prosecutor stating that Ross while on bond in November 2019 tested positive for cocaine). In his brief to the Ohio Supreme Court, Ross argued that a "second [negative] drug test [was] … submitted in court for sentencing." Doc. 17-1, at 107, 113. Nevertheless, Ross hasn't shown that his earlier failed drug test was erroneous.

[5]    Rule 26(B)(1) provides:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

20

harder to send documents and make copies." Doc. 20, at 5. Even if it could be said that Ross's financial status is an objective impediment external to his defense, *but see Tripp v. Bock*, No. 01-10066, 2002 WL 1461759, at *3 (E.D. Mich. July 5, 2002), Ross doesn't show that his alleged financial limitations prevented him from filing court documents. Indeed, Ross doesn't say that he couldn't file documents with the court, and the record shows that he submitted lengthy court filings which included copies of supporting documents. *See, e.g.*, Doc. 17-1, at 77–96, 100–135. So Ross hasn't shown cause to excuse his procedural default. *See Bonilla*, 370 F.3d at 498.

Finally, Ross has not shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Even if actual innocence could overcome the procedural default of a claim challenging a sentence rather than a conviction, Ross has not alleged actual innocence. *See Gatewood v. United States*, 979 F.3d 391, 394 n.1 (6th Cir. 2020) ("it is an open question in this circuit whether actual innocence can excuse procedural default in a challenge to a noncapital sentence") (citing *Gibbs v. United States*, 655

F.3d 473, 477–78 (6th Cir. 2011), and finding that "[b]ecause Gatewood does not present a claim of actual innocence, we need not address the question").

### 1.2    Ground one is not cognizable

Moreover, ground one is not cognizable because Ross challenges the trial court's application of Ohio's sentencing laws. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *see Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Thompson v. Bracy*, No. 1:19-cv-58, 2022 WL 676288, at *23 (N.D. Ohio Jan. 14, 2022) (claim that the trial court failed to make findings under Ohio Revised Code § 2929.14(C)(4) before imposing consecutive sentences rests on state law and is not cognizable), *report and recommendation adopted*, 2022 WL 911260 (N.D. Ohio Mar. 29, 2022).

Ross hasn't shown that his ground for relief implicates federal constitutional concerns. *See Oregon v. Ice*, 555 U.S. 160, 171 (2009) (state trial court's imposition of consecutive sentences does not implicate federal constitutional concerns). And he hasn't alleged that his sentence exceeds the statutory range. *See, e.g., Croce v. Miller*, No. 1:15-cv-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (rejecting the petitioner's claim that consecutive sentences violated the petitioner's due process rights because there is no federal constitutional issue when a state sentence is within the state

22

statutory range) (collecting cases), *report and recommendation adopted*, 2017 WL 3382665 (N.D. Ohio Aug. 7, 2017).

As to Ross's bald assertion that the trial court's finding that Ross "was a danger … was based on [an] incomplete and erroneous pre[-]sentencing evaluation," Doc. 1, at 5, Ross hasn't shown that the state court's recitation of his criminal history was false or that he lacked an opportunity to correct it. *See, e.g., Teneyuque v. Palmer*, No. 2:17-CV-13833, 2020 WL 1888828, at *9 (E.D. Mich. Apr. 16, 2020) ("A sentence may violate federal due process if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct") (collecting cases). So, alternatively, ground one is not cognizable.

2.    *Ground two is procedurally defaulted and not cognizable*

In ground two, Ross alleges "fraud indictment." Doc. 8, at 7. He doesn't provide further explanation. Ross raised a similar claim in his memorandum in support of jurisdiction to the Ohio Supreme Court. *See* Doc. 17-1, at 104. To the Ohio Supreme Court, Ross cited Ohio statutes and rules of evidence and argued that the prosecution and the trial court "knew no one went to the grand jury to indict defendant as the record is silent." *Id*. Ross concluded:

> Fraud upon the courts tampering with records, tampering with evidence, alter, conceal a record. Appeal court has no record to prove otherwise under civil rule 44. No record of journal entry filed pursuant to App. R. 9 (B) (D) lack of records is miscarriage of justice abuse of process, misprison of a felony.

23

*Id.*

Ground two is procedurally defaulted because Ross failed to raise this claim to the Ohio court of appeals—he only raised it to the Ohio Supreme Court. *See Castille v. Peoples*, 489 U.S. 346, 349–51 (1989) (raising a claim for the first time to the highest state court on discretionary review is not "fair presentation" for exhausting a federal habeas claim); *Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").

As explained above, Ross hasn't shown cause to excuse the procedural default. And he hasn't identified "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" to show actual innocence. *See Schlup*, 513 U.S. at 324.

Alternatively, ground two is not cognizable. Challenges to a grand jury proceeding and the resulting indictment are not cognizable in federal habeas. The Constitution's indictment requirement has never "been applied to the states." *Koontz*, 731 F.2d at 369. All that is required when a state charges a defendant is sufficient notice. *Id.*; *see Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986). As a result, "[b]eyond notice," which Ross has not contested, "a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002).

24

3.      *Ground three is procedurally defaulted*

It is not clear what Ross alleges in ground three. Ross's ground three reads:

> **Ground three**: Malicious prosecution.
>
> *Supporting facts*: Trial court sentenced defendant to 36 months (9 months) for each count—ineffective assistance of counsel lad me to believe probation was to be. Sentencing never realized to after sent to prison. PRC/unability to participate in programs for good days/registration never fully explained.

Doc. 8, at 8. In the margin next to ground three, Ross wrote, "(See Attached)." *Id*. Ross attached to his petition copies of the docket that were sent to him when he filed his federal habeas petition. Doc. 8-1, at 2–5. He submitted a letter written in 2019 that is difficult to read due to its poor print quality, but which appears to be written by Ross's former employer and states that Ross was a good employee. *Id*. at 1. Ross attached a letter from his sister to the court, Doc. 8-3, and a copy of an envelope, Doc. 8-4. None of these items shed any light on what, precisely, Ross alleges constituted malicious prosecution, or explain how malicious prosecution is related to trial counsel's alleged ineffectiveness.

Liberally construing ground three, I will evaluate the same malicious prosecution claim that Ross raised in state court, and a few possible interpretations of his ineffective assistance of counsel claim.

3.1     *Ross's malicious prosecution claim is procedurally defaulted*

25

Ross raised a malicious prosecution claim on direct appeal to the Ohio Supreme Court, but he didn't present the claim to the Ohio court of appeals. So the claim is procedurally defaulted. *See Castille*, 489 U.S. at 349–51; *Baston*, 282 F.Supp.2d at 661. For the same reasons explained above, Ross hasn't show cause to excuse the procedural default or actual innocence.

### 3.2  *Any ineffective assistance of counsel claim as to sentencing is procedurally defaulted*

To the extent that the Court liberally construes ground three to allege an ineffective-assistance-of-counsel claim during sentencing, such a claim is procedurally defaulted. This is so because Ross never raised to the Ohio court of appeals this claim as a reason that counsel was ineffective. *See McMeans*, 228 F.3d at 681 (a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts). While Ross arguably raised such a claim to the Ohio Supreme Court, Doc. 17-1, at 106–07, doing that did not preserve the claim. *See Castille*, 489 U.S. at 349–51; *Baston*, 282 F.Supp.2d at 661. And, as above, Ross hasn't shown that he can overcome the procedural bar.

To the extent that the Court liberally construes Ross's ineffective-assistance-of-counsel claim to be based on matters outside the record, it is also procedurally defaulted.[6] Ross states that counsel "led [him] to believe

---

[6]  In his petition, Ross states that he raised ground three to the Ohio courts. Doc. 8, at 9. This shows that he intends ground three to be the same claim that he raised on direct appeal—not a claim based on matters outside the record.

probation was to be" and didn't "fully explain[]" post-release control, good time credit, and sex-offender registration details. Doc. 8, at 8. A claim based on matters outside the record must be raised in a state post-conviction petition. *See Hill v. Mitchell,* 842 F.3d 910, 936 (6th Cir. 2016) (citing *State v. Cole,* 443 N.E.2d 169, 171 (Ohio 1982)). But state law bars Ross from filing a post-conviction petition now. *See* Ohio Rev. Code § 2953.21(A)(2)(a) (a post-conviction petition must be filed in the trial court 365 days after the transcript is filed on direct appeal); *see* Doc. 17-1, at 144 (Ohio court of appeals docket showing that Ross's transcript was filed on direct appeal in March 2020).

An Ohio court may consider a late post-conviction petition if, in relevant part:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or … the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right [and]
>
> (b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted[.]

Ohio Rev. Code § 2953.23(A)(1)(a) & (b); Ohio Rev. Code § 2953.21(A)(2)(a).

Ross hasn't met any of these requirements. He knew of the factual basis for his claims when he was sentenced in January 2020. His claim isn't based on a new right that applied retroactively to him. And he hasn't shown by clear

and convincing evidence that no reasonable factfinder would have found him guilty. It would thus be futile for Ross to return to state court to attempt to file a late post-conviction petition based on his alleged claim in ground three. So any such claim is procedurally defaulted. *See, e.g., Buckley v. Ohio*, No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020) (finding that a claim was futile and therefore procedurally defaulted when the petitioner hadn't filed a post-conviction petition to assert the claim, the time to file a post-conviction petition had passed, and the petitioner hadn't met any of the requirements in Ohio Revised Code § 2953.23(A)(1) for filing a late petition) (collecting cases), *report and recommendation adopted*, 2020 WL 5593099 (N.D. Ohio Sept. 18, 2020).

As detailed above, Ross hasn't shown cause to excuse the procedural default. He also hasn't shown prejudice—that an error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. 478, 494 (1986). The trial court explained to Ross during his no-contest plea hearing that it could sentence him to up to four years in prison with mandatory five years of probation. *See* Doc. 17-4, at 27–28. Ross stated that he understood. *Id*. Ross also agreed that he was satisfied with his counsel and that counsel had not made any promises to him about what might happen at the court's sentencing hearing. *Id*. at 34. Ross now alleges only that counsel "led [him] to believe" he would receive probation, Doc. 8, at 8, but "[s]uch watery allegations, without specific details concerning

counsel's performance, do not suffice to demonstrate counsel's ineffectiveness."
*Knapp v. Eppinger*, No. 1:14-cv-1394, 2015 WL 4249913, at *20 (N.D. Ohio July
13, 2015) (finding that the petitioner's affidavit stating that counsel "led [the
petitioner] to believe" that the case against her was weak was insufficient to
show counsel's ineffectiveness). And Ross doesn't explain how counsel's alleged
predictions "infect[ed] his entire trial with [an] error of constitutional
dimensions." *See Murray*, 477 U.S. at 494.

Finally, Ross hasn't challenged the voluntariness of his no-contest plea.
Although the Court should construe Ross's pro se filings liberally, Ross cannot
expect the Court to construct arguments for him.[7] *Martin v. Overton*, 391 F.3d
710, 714 (6th Cir. 2004). Nevertheless, to the extent that the Court liberally
construes Ross's ground three as a claim challenging the voluntary nature of
Ross's no-contest plea, Ross would not be entitled to relief on such a claim. Ross
didn't challenge in the Ohio courts the voluntariness of his plea. Arguably, he
could still file a motion to withdraw his plea, *see* Ohio Criminal Rule 32.1, and
in that sense Ross's claim would be unexhausted. That would make Ross's

---

[7]    Ross filed a Traverse, Doc. 20, and a "Memorandum of points and
authorities," Doc. 20-1, which total 46 pages. In those pages, Ross, in a stream-
of-consciousness presentation, discusses autobiographical details, explains
events leading up to his arrest and conviction, and identifies everything that
he believes went wrong in his case. Any new claims that Ross purports to raise
in these documents are not properly presented as grounds for relief in a habeas
petition and the Court need not consider them. *See* Rule 2(c) of the Rules
Governing Section 2254 Cases; *see also Tyler v. Mitchell*, 416 F.3d 500, 504 (6th
Cir. 2000) (a habeas claim is not properly before court when the petitioner first
presents it in a traverse rather than in the petition).

petition a "mixed petition" with exhausted and unexhausted claims. *See Rhines v. Weber*, 544 U.S. 269 (2005). When faced with a mixed petition, a court can dismiss the whole petition; dismiss the unexhausted claim; or stay the case so that the petitioner can exhaust the claim in state court. *Id*. at 277–78. But Ross hasn't shown good cause to entitle him to a stay or shown that his claim has merit. *See id*. at 277. As a result, any claim that could be construed as a challenge to Ross's no-contest plea should be dismissed. *See id*. at 278.

### 4. *Ground four is not cognizable*

In ground four, Ross alleges "Motion to vacate fines." Doc. 8, at 10; *see also* Doc. 20, at 3–4 (trial court entries denying Ross's motion to vacate fines and costs). Ground four is not cognizable because, generally, fines "fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim. *See Kennedy v. Nagy*, No. 18-1463, 2018 WL 3583212, at *2 (6th Cir. July 12, 2018); *Washington v. McQuiggin*, 529 F. App'x 766, 773 (6th Cir. 2013) (collecting authority).

### Conclusion

For the reasons set forth above, I recommend that Ross's Petition be dismissed.

Dated: November 28, 2023

                                         */s/ James E. Grimes Jr.*
                                         James E. Grimes Jr.
                                         U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).